In The



Court of Appeals



Ninth District of Texas at Beaumont



________________



NO. 09-07-00573-CR


 _____________________



TORREY MONTELL LANDRY AKA TORREY MONTEL LANDRY, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 252nd District Court


Jefferson County, Texas


Trial Cause No. 99268






MEMORANDUM OPINION


 A jury found Torrey Montell Landry (1) guilty of driving while intoxicated with a child
passenger and assessed punishment at two years of confinement in a state jail facility. See
Tex. Pen. Code Ann. § 49.045 (Vernon Supp. 2008). In this appeal, Landry contends the
evidence was legally and factually insufficient to support his conviction. Because the
evidence is sufficient to support the verdict, we affirm the judgment.

 In a legal sufficiency review, an appellate court considers the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S.
307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The trier of fact is the sole judge of the
facts proven and of the weight to be given the testimony, unless otherwise provided by law. 
Tex. Code Crim. Proc. Ann. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979); see also
Lancon v. State, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008) ("Appellate courts should
afford almost complete deference to a jury's decision when that decision is based upon an
evaluation of credibility."). 

 In a factual sufficiency review, the court considers the evidence in a neutral light. 
Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App.), cert. denied, 128 S. Ct. 282, 169
L. Ed. 2d 206 (2007). The issue is whether the evidence supporting the conviction, although
legally sufficient, is so weak that the fact-finder's determination is clearly wrong and
manifestly unjust, or whether conflicting evidence so greatly outweighs the evidence
supporting the conviction that the fact-finder's determination is clearly wrong and manifestly
unjust. Id. 

 A person commits the offense of driving while intoxicated with a child passenger if
the person is intoxicated while operating a vehicle in a public place and the vehicle is
occupied by a passenger under fifteen years old. See Tex. Pen. Code Ann. § 49.045. The
statutory definition of "intoxicated" applicable to the offense is:

 (A) not having the normal use of mental or physical faculties by
reason of the introduction of alcohol, a controlled substance, a
drug, a dangerous drug, a combination of two or more of those
substances, or any other substance into the body; or 

 (B) having an alcohol concentration of 0.08 or more.


Tex. Pen. Code Ann. § 49.01(2) (Vernon 2003). 

 A witness called by the prosecution, Jerone Kemp, testified that he witnessed a tan
four-door vehicle speeding and swerving down a street in Jefferson County. The driver of
the vehicle lost control and the vehicle hit a stop sign. After hitting the stop sign, and with
a flat tire, the vehicle went into a spin, and stopped in the middle of the street. The driver,
Landry, appeared unconscious and "laid across both the driver and passenger side, the whole
seat." A young child was in the back seat.

 Kemp did not observe any blood, bruising, or swelling on Landry, but the child was
crying. Kemp and his girlfriend removed the child from the vehicle to make sure the child
was not injured. Landry did not respond at first, but once Kemp got his attention, Landry
began slurring. Kemp testified Landry was not responding the way a normal person would,
and was confused and belligerent. Landry appeared intoxicated. He had trouble standing
and was staggering. He seemed "messed up." Landry said that he drank "one or two beers." 
Landry attempted to start the car and leave the scene. The police arrived, and Kemp reported
what happened to the police.

 Officer Shawn Tolley testified that he responded to the accident around 8:00 p.m. 
E.M.S. had already responded, but Landry initially refused medical treatment. The first thing
Tolley observed about Landry was "an overpowering odor of an alcoholic beverage[.]" The
odor was not just from Landry's breath, but was permeating from his body. His speech was
slurred and he was hard to understand. His sentences seemed erratic and he staggered when
he walked. Tolley searched the inside of the vehicle but did not recover any open containers
or alcoholic beverages. Landry was unsteady, and "his demeanor would shift from calm to
angry." Tolley did not administer field sobriety tests because Tolley was concerned for his
and Landry's safety and "didn't believe [he] could successfully conduct them on him." 
Based on Tolley's opinion that Landry did not have the normal use of his mental and physical
faculties because of the introduction of alcohol or drugs or a combination of them, Tolley
arrested him.

 The young child in the vehicle was Landry's two-year-old son. Tolley asked Landry
to provide a phone number of someone who could come get the child. Landry attempted to
provide his mother's phone number to Tolley, but the phone number was incorrect. After
fifteen minutes, Tolley was finally able to obtain Landry's mother's correct phone number. 

 Tolley read Landry warnings regarding the consequences of submitting to, or refusing,
a breath test or blood test. Tolley offered Landry a blood test and explained that if he
refused, he could lose his driver's license and his license could be suspended for a substantial
period of time. Initially, Landry agreed to submit to a blood test. 

 Landry began complaining of lower back pain, so instead of transporting Landry to
the police station, Tolley took him to the hospital. Landry did not complain of a head injury. 
After he was taken to the hospital, Landry refused to submit to the blood test.

 It was almost midnight when Tolley and Landry arrived at the jail. Once at the jail,
Landry became more calm and rational. Due to the lapse in time, Tolley decided not to
administer video-taped field sobriety tests at the jail. At trial, Tolley admitted that an
accident could cause someone to have a different demeanor than they normally would, but
stated that in his opinion Landry's demeanor was not attributable to the accident.

 Landry did not testify during the guilt-innocence stage. Landry's mother, however,
testified that prior to the accident, she, Landry, and other family members traveled to
London. According to Landry's mother, the family had arrived home from London early on
the morning of the accident. Landry's mother testified that she was with Landry
approximately five hours prior to the accident and he did not appear to be intoxicated. She
saw him again an hour before the accident and he appeared to be tired, but not intoxicated. 
After the accident, Landry told her he was acting differently because he hit his head during
the accident. 

 Landry's wife testified that Landry left the house with their son to pick up Landry's
paycheck at about four o'clock in the afternoon. Landry was tired when he left. At that time,
he had not been drinking and did not appear intoxicated. She did not see or hear from him
until an officer came by and told her about the accident. Landry later told her that he hit his
head the night of the accident and "got dazed when he got out of the car." Landry's brother-in-law also testified that Landry had stopped by his apartment around three or four o'clock
in the afternoon the day of the accident, and that Landry had not been drinking. 

 Landry challenges the sufficiency of the evidence supporting the jury's determination
that he was intoxicated as a result of not having the normal use of his mental and physical
faculties by reason of the introduction of alcohol or drugs into his body. He suggests that his
symptoms of intoxication were instead due to the fact that he was tired. He also complains
that Officer Tolley failed to administer any field sobriety tests. 

 Evidence of a defendant's performance of field sobriety tests is not required to support
a driving-while-intoxicated conviction as long as other sufficient evidence exists in the
record to support the conviction. An officer's testimony may provide sufficient evidence to
support a conviction for driving while intoxicated. See Whisenant v. State, 557 S.W.2d 102,
105 (Tex. Crim. App. 1977) (officer's testimony was sufficient to support the trial court's
finding that probationer violated the conditions of probation by driving a motor vehicle upon
a public highway while intoxicated). A refusal to take a blood test may be considered by the
fact finder. See Gaddis v. State, 753 S.W.2d 396, 399-400 (Tex. Crim. App. 1988); Bright
v. State, 865 S.W.2d 135, 137 (Tex. App.--Corpus Christi 1993, pet. ref'd); Finley v. State,
809 S.W.2d 909, 913 (Tex. App.--Houston [14th Dist.] 1991, pet. ref'd); see also Tex.
Transp. Code Ann. § 724.061 (Vernon 1999) ("A person's refusal of a request by an officer
to submit to the taking of a specimen of breath or blood, whether the refusal was express or
the result of an intentional failure to give the specimen, may be introduced into evidence at
the person's trial."). The jury also heard Kemp's testimony concerning the accident and
Landry's appearance.

 Viewing the record in the light most favorable to the verdict, a rational jury could
have concluded beyond a reasonable doubt that Landry was intoxicated. Furthermore, a
neutral review of the entire record does not demonstrate that the proof of guilt is so obviously
weak as to undermine confidence in the jury's determination, nor does it demonstrate that the
proof of guilt is greatly outweighed by contrary proof. The jury was not required to believe
the testimony of any witness, and could draw rational inferences from the testimony in
resolving any inconsistencies. As the trier of fact, the jury was free to determine what weight
to give the testimony of each of the witnesses, including that of Kemp and Officer Tolley. 
The evidence is legally and factually sufficient to support the verdict. We overrule
appellant's sole issue and affirm the trial court's judgment.



 AFFIRMED. 

 ____________________________

 DAVID GAULTNEY

 Justice


Submitted on December 29, 2008

Opinion Delivered March 25, 2009

Do Not Publish


Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. The indictment and the trial court's judgment refer to appellant as Torrey Montell
Landry a/k/a Torrey Montel Landry.